# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles Norgle | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 98 C 7288 | DATE | 11/5/2003 |
| CASE TITLE | Torry vs. Northrop Grumman Corporation | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Defendant's Motion for Summary Judgment

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due _____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Before the court are Defendant Northrop Grumman Corporation's Motion for Summary Judgment [27-1] and Motion to Strike the Affidavits of Ardella Thomas, Jacqueline Davis and Kerry Howard [39-1]. For the reasons stated on the attached order, Defendant's motion for summary judgment [27-1] is GRANTED, and Defendant's motion to strike [39-1] is GRANTED in part and DENIED in part. The clerk shall enter judgment pursuant to Federal Rule of Civil Procedure 58.

As a result of this order, Defendant's Motion to Strike Plaintiff's LR56.1 Statement in Response to Defendant's Statement of Material Facts [38-1] is DENIED as moot. It is so ordered.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | **Document Number** |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | NOV 0 7 2003 date docketed | 41 |
| ✓ | Docketing to mail notices. | | |
| ✓ | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| | courtroom deputy's initials | date mailed notice | |
| | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**DOCKETED**

**NOV 0 7 2003**

NANCY E. TORRY, )
)
    Plaintiff, )
)
    v. ) No. 98 C 7288
)
) Honorable Charles R. Norgle
NORTHROP GRUMMAN CORPORATION, )
)
    Defendant. )

## OPINION AND ORDER

CHARLES R. NORGLE, District Judge.

Before the court are Defendant Northrop Grumman Corporation's Motion for Summary Judgment and Motion to Strike the Affidavits of Ardella Thomas, Jacqueline Davis and Kerry Howard. For the following reasons, Defendant's motion for summary judgment is granted; and Defendant's motion to strike is granted in part and denied in part.

### I. INTRODUCTION[1]

Defendant Northrop Grumman Corporation ("Northrop") is a global defense company that provides technologically advanced and innovative products, services and solutions in defense electronics, systems integration, information technology, advanced aircraft, shipbuilding and space technology. On January 1, 1985, Plaintiff Nancy E. Torry (African-American, DOB: 12/28/47) began her employment with Northrop at its facility in Rolling Meadows, Illinois. Torry's first position with Northrop was that of Assembler/Wirer Solderer ("AWS") (grade 6). Within six or

---

[1] Unless otherwise specified, all facts presented in this opinion are taken from Pl.'s Resp. to Def.'s Local Rule 56.1 Statement of Material Facts.

seven months of employment, Northrop promoted Torry to the position of Production Inspector A (grade 9).

In 1988, Northrop implemented a reduction in force ("RIF") as part of an overall cost-cutting strategy. Pursuant to the 1988 RIF, Northrop placed Torry on the layoff list based on her seniority compared to others in her unit and in her classification as an Inspector. Acting under the terms of Northrop's existing layoff policy, Northrop reclassified Torry as an AWS to avoid a layoff. On November 5, 1988, Northrop promoted Torry back to her previous position as Production Inspector A (grade 9).

On or about May 6, 1989, Northrop promoted Torry to Production Inspector Senior (grade 11) in the Product Assurance Organization Unit ("Unit 9510"), a unit within the Department of Product Operations. From 1993 until her termination in 1996, Torry worked as a Product Inspector Senior AW1 in Unit 9510 under the supervision of Lillian Bolden, the unit's General Supervisor.

On several occasions during the course of Torry's employment, including in late 1995 and 1996, Northrop encouraged Inspectors to obtain training or to re-certify for other positions to enhance their marketability. On May 17, 1996, Torry satisfactorily completed Nothrop's soldering course and obtained Category E certification. See Def.'s Mot. for Summ. J., Ex. C, at 3. Northrop also encouraged its employees to visit the Career Development Office to inquire on other available employment opportunities within the company. At some point, Torry expressed an interest in transferring to another position, and Bolden encouraged Torry to visit the Career Development Office to obtain the necessary paperwork. At no time in 1996, however, did Torry apply for any available positions with the Career Development Office.

2

In 1996, major cutbacks in federal spending directed toward the budgets of the Department of Defense affected Northrop's business and resulted in the reorganization of its operations. Part of Northrop's reorganization included the implementation of two RIFs at its Rolling Meadows facility. In February 1996, Northrop carried out a RIF effective in April 1996 ("February RIF"). Due to Torry's seniority with the company, she was not affected by the February RIF. Cost reduction efforts continued in September 1996 when Northrop hired temporary workers for a specific short-term project. Northrop expected to complete this short-term project by the end of 1996. These temporary workers occupied the positions of AWS and Assembler General ("AG"). Finally, in October 1996, due to a continuing need to reduce costs, Northrop carried out a second RIF effective December 1996 ("October RIF"). Torry was affected by the October RIF.

On October 18, 1996, Northrop informed Torry that it was terminating her employment as part of the October RIF, with the termination effective December 17, 1996. Northrop also informed Torry that she had two-year recall rights to a Product Inspector Senior position and that if she applies for and is hired for any Northrop job within two years of her layoff, she will keep her original seniority date. Additionally, Northrop offered Torry and other employees who were given layoff notices redeployment services to assist them in finding another position within the company. Following Torry's layoff, she did not apply for any other positions at Northrop.

At the time of the October 1996 RIF, Torry was one of four employees placed on the layoff list in Unit 9510. The others included: Mamie Woodson (African-American, DOB: 12/12/47, Supervisor); Ardella Thomas (African-American, DOB: 3/27/42, Product Inspector Senior AWI); and Steven Jennett (Caucasian, DOB: 6/12/50, Product Inspector Senior AWI). All remaining Product Inspector Senior AWIs in Unit 9510 had more seniority than Torry. After Bolden compiled

3

the layoff list for her unit, she forwarded it to the Employee Relations Section of the Human Resources Department ("Employee Relations") for review. Employee Relations determined that Torry's layoff was in compliance with Northrop's layoff policy.

On December 18, 1996, Torry filed a charge of discrimination with the Illinois Department of Human Rights ("IDHR") alleging that Northrop discriminated against her based upon her age and race when it denied her alternative employment after the October 1996 RIF. On September 24, 1997, the IDHR dismissed Torry's charge based on a lack of substantial evidence. See Def.'s Mot. for Summ. J, Ex. C-1. In connection with Torry's complaint to the IDHR, on September 2, 1998, the EEOC adopted its findings and issued Torry a Notice of Right to Sue. On November 13, 1998, Torry filed a *pro se* Complaint in this court, alleging discrimination under the Age Discrimination in Employment Act ("ADEA")[2] based on Northrop's failure to provide her with "alternative employment opportunities" leading to her termination under the October RIF. Compl. ¶ 12.

On June 6, 2003, Northrop filed its Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. Northrop's motion is fully briefed and now before the court.

## II. DISCUSSION

### A. Standard for Summary Judgment

Summary judgment is permissible when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The nonmoving party cannot rest on the pleadings alone, but must identify specific facts, see Cornfield

---

[2] Torry's *pro se* Complaint makes no specific claim of racial discrimination. However, Torry argues that because her EEO charge (which provides the basis for this lawsuit) does allege racial discrimination, Torry can seek relief under Title VII. See Pl.'s Resp. to Def.'s Mot. for Summ. J., at 10. The court addresses this issue in Part II.B.2.

4

v. Consolidated High Sch. Dist. No. 230, 991 F.2d 1316, 1320 (7th Cir. 1993), that raise more than a mere scintilla of evidence to show a genuine triable issue of material fact. See Murphy v. ITT Technical Services, Inc., 176 F.3d 934, 936 (7th Cir. 1999).

In deciding a motion for summary judgment, the court can only consider evidence that would be admissible at trial under the Federal Rules of Evidence. See Bombard v. Fort Wayne Newspapers, Inc., 92 F.3d 560, 562 (7th Cir. 1996). The court views the record and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party. Fed. R. Civ. P. 56(c); see also Perdomo v. Browner, 67 F.3d 140, 144 (7th Cir.1995). "In the light most favorable" simply means that summary judgment is not appropriate if the court must make "a choice of inferences." See United States v. Diebold, Inc., 369 U.S. 654, 655 (1962); see also First Nat'l Bank of Arizona v. Cities Service Co., 391 U.S. 253, 280 (1968); Wolf v. Buss (America) Inc., 77 F.3d 914, 922 (7th Cir. 1996). The choice between reasonable inferences from facts is a jury function. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

When the defendant moves for summary judgment, the court must view the record and all inferences in a light most favorable to the plaintiff. Ameritech Benefit Plan Comm. v. Communication Workers of Am., 220 F.3d 814, 821 (7th Cir. 2000). However, the inferences construed in the plaintiff's favor must be drawn from specific facts identified in the record that support the plaintiff's position. Waldridge v. American Hoechst Corp., 24 F.3d 918, 922-23 (7th Cir. 1994). Under this standard, "[c]onclusory allegations alone cannot defeat a motion for summary judgment." Thomas v. Christ Hospital and Medical Center, No. 02-3373, -- F.3d --, 2003 U.S. App. LEXIS 7921, at *11 (7th Cir. April 25, 2003) (citing Lujan v. Nat'l Wildlife Federation, 497 U.S. 871, 888-89 (1990)).

## B. Establishing Proof in an Employment Discrimination Case

For the plaintiff to prove age or racial discrimination, she must present either direct or indirect evidence of her claims. See Krchnavy v. Limagrain Genetics Corp., 294 F.3d 871, 875 (7th Cir. 2002); see also Robin v. Espo Engineering Corp., 200 F.3d 1081, 1088 (7th Cir. 2000). If the plaintiff cannot present direct evidence to establish the discrimination claim, she may attempt to prove her case indirectly with circumstantial evidence using the familiar McDonnell Douglas burden-shifting method. See Krchnavy, 294 F.3d at 875 (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 801-03 (1973)).

The McDonnell Douglas method of proof entails three steps. See Robin, 200 F.3d at 1088. First, the plaintiff must establish a *prima facie* case of employment discrimination. See id. If the plaintiff successfully presents a *prima facie* case, a presumption of discrimination arises and the burden then shifts to the defendant to offer evidence of a legitimate, nondiscriminatory reason for taking an adverse employment action against the plaintiff. See id. "[T]he plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." Baron v. City of Highland Park, 195 F.3d 333, 339 (7th Cir. 1999) (citing Wilson v. AM Gen. Corp., 167 F.3d 1114, 1119-20 (7th Cir. 1999)).

In this case, Torry offers no direct evidence of age or race discrimination. See Pl.'s Resp. to Def.'s Mot. for Summ. J., at 7. As such, the court will analyze Torry's ADEA and Title VII claims under the McDonnell Douglas burden-shifting method. See Krchnavy, 294 F.3d at 875 (stating that the McDonnell Douglas framework applies to both ADEA and Title VII discrimination claims).

### 1. Torry's *Prima Facie* Case Under the ADEA

To establish a *prima facie* case of discrimination under the ADEA, Torry must demonstrate that: (1) she is a member of the protected class of persons over forty years of age; (2) she was performing at a satisfactory level; (3) she was subject to an adverse employment condition; and (4) she was treated less favorably than younger, similarly situated employees outside the protected class. See Schuster v. Lucent Technologies, Inc., 327 F.3d 569, 574 (7th Cir. 2003); see also Krchnavy, 294 F.3d at 875; Radue v. Kimberly-Clark Corp., 219 F.3d 612, 617 (7th Cir. 2000).

The first three elements of Torry's *prima facie* case under the ADEA are not in dispute. In 1996, Torry was 48 years of age and in good standing with the company at the time Northrop implemented the October RIF. Torry was also subject to an adverse employment condition when she was terminated as part of a RIF.[3] Thus, to determine if Torry has established a *prima facie* case under ADEA, the only issue the court must decide is whether she was treated less favorably than younger, similarly situated employees outside the protected class. See Radue, 219 F.3d at 617.

Torry attempts to offer evidence of younger, similarly situated employees who were treated more favorably in three different contexts. First, Torry offers evidence suggesting that there were numerous younger, *permanent* employees outside of Unit 9510 that she could have displaced under Northrop's existing layoff policy. Torry concludes that Northrop's decision to retain these younger, *permanent* employees violated its existing layoff policy and is therefore evidence of age discrimination. Second, Torry offers evidence suggesting that Northrop's decision to retain eleven younger, *temporary* workers also violated Northrop's existing layoff policy and is evidence of age

---

[3] The court notes, however, that the discrimination Torry complains of in her Complaint is not based on her selection for termination under the RIF, but instead on Northrop's failure to place her in an alternative position prior to implementing the October 1996 RIF.

7

discrimination. Third, Torry offers evidence showing that prior to the October RIF, Northrop attempted to place Steven Jennett, a Product Inspector Senior AWI who is younger than Torry, in several alternative positions without attempting to do the same for her.

### a. *Torry's Claim that Younger, Permanent Employees are Similarly Situated*

Torry asserts that there were numerous younger, permanent employees outside of Unit 9510 she could have displaced under Northrop's existing layoff policy. Specifically, Torry argues that she should have displaced any one of the following permanent employees regardless of whether she applied for or previously held their positions. These employees include: Joanne Barksdale; Willie Mae Baskins; Josephine Cheatham; Henry Coleman; Pat Cox; Luis Rivera; Patricia Slone; Marvina Trunk; Fred; Sandra; Cara Smith, Gwen Powers; Ron Krivanek; and Dana Goyette.[4] See Pl.'s Resp. to Def.'s Mot. for Summ. J., at 8. Torry concludes that Northrop's decision to retain these younger, similarly situated permanent employees violated its existing layoff policy and is therefore evidence of age discrimination.

Northrop contends that none of the permanent employees Torry identifies are similarly situated because under its applicable layoff policy, Torry was not eligible to displace any of these permanent employees. Northrop argues, and Torry admits, that the layoff policy applicable to this case states in pertinent part, as follows:

> a. The list of hourly employees to be considered for layoff shall include all employees in the affected job classification at that plant location.
>
> b. Hourly employees within a job classification shall be selected for layoff in reverse seniority order; that is, employees with the least seniority shall be laid off first.

---

[4] Three of these permanent employees remain unidentified at this time.

8

  c. An employee subject to layoff may displace the least senior employee in the same job classification in any other organizational unit in a particular plant location. If such displacement requires work on a shift which the employee is not willing to accept, the employee will be laid off.

  d. An employee with more than two years seniority may, in lieu of layoff, elect to be reclassified to a *previously held* lateral or lower-level hourly job classification, and will displace the least senior person in that classification in any other organizational unit, within the plant location, provided the least senior employee has less seniority than the displacing employee . . . .

  e. To be eligible for displacement, an employee must possess the necessary skills and qualifications to perform the work.

See Pl.'s Resp. to Def.'s LR 56.1 Statement of Material Facts ¶ 14 (emphasis added). Under this policy, Northrop contends that Torry was not eligible to displace any of these younger, permanent employees outside of Torry's unit because she did not apply for or previously hold any of these positions. Because there were no lateral AWI positions available, Northrop claims that the only position in which Torry could have displaced a less senior, permanent employee was that of AWS -- the only other position Torry previously held. Because no permanent Northrop employees occupied the position of AWS at the time of the October 1996 RIF, Northrop contends that Torry could not have displaced any of these younger, less senior employees and that Torry's layoff was proper.

  Torry argues, however, that the layoff policy contained in Northrop's Employee Handbook also applies to this case. Torry asserts that under the Northrop Employee Handbook policy, employees are not required to apply for lower level positions to displace less senior permanent employees, regardless of whether they previously held the position. See Pl.'s Resp. to Def.'s Mot. for Summ. J, at 8. As such, Torry contends that she should have automatically been placed in a lower level, permanent position even though she never applied for one. See Pl.'s Resp. to Def.'s

9

Mot. for Summ. J., at 3. Because she was not, Torry claims that these younger, similarly situated permanent employees were treated more favorably.

Torry's reliance on Northrop's Employee Handbook layoff policy (which is inconsistent with the above layoff policy Torry admits applies) is misplaced. Northrop's Employee Handbook layoff policy expressly states that it is not applicable to the hourly employees working at the ESID-Rolling Meadows facility. See Pl.'s Resp. to Def.'s Mot. for Summ. J., Ex. 5. Because Torry was an hourly employee at Northrop's ESID-Rolling Meadows facility, Northrop's Employee Handbook policy does not apply to this case. Given that Northrop's Employee Handbook policy is inapplicable on its face, Torry's claim that these younger, permanent employees were treated more favorably fails because Torry has not shown that she was substantially similar to these other permanent employees. See Radue, 219 F.3d at 618 (stating "in a failure to transfer case, an employee need not show complete identity in comparing himself to the better treated employee, but he must show substantial similarity.").

### b. *Torry's Claim that Younger, Temporary Workers are Similarly Situated*

Similarly, Torry's attempt to show that younger, similarly situated *temporary* workers were treated more favorably fails for the same reason as her claim based on *permanent* employees fails. Torry identifies numerous temporary workers occupying the position of AWS in October 1996. See Pl.'s Resp. to Def.'s Mot. for Summ. J., at 9-10. Torry argues that she is similarly situated with these younger temporary workers and that by not allowing her to displace them, Northrop treated them more favorably. Again, Torry relies on the inapplicable Employee Handbook layoff policy when she concludes that she could have displaced temporary AWS workers. Given that all AWS positions in the Rolling Meadows facility were occupied by temporary workers in October 1996, and that the

10

applicable layoff policy does not expressly permit displacing temporary workers, Torry was not eligible to displace any of the AWS workers at the time Northrop implemented the October RIF. As a result, Torry's attempt to show that younger, temporary workers were treated more favorably fails because these temporary workers are not similarly situated with Torry. See Radue, 219 F.3d at 618.

### c. *Torry's Claim that Steven Jennett is Similarly Situated*

Finally, Torry's third attempt to establish the fourth element of her *prima facie* case of age discrimination under the ADEA also fails. Steven Jennett, the younger, Caucasian Inspector who Torry claims Northrop treated more favorably by attempting to place him in several alternative positions, was 46 years of age at the time of the 1996 RIF. To be similarly situated under the ADEA, the comparator must be outside the protected class of those over 40 years of age. See Michas v. Health Cost Controls of Illinois, Inc., 209 F.3d 687, 693 (7th Cir. 2000). Thus, Jennett was neither outside the protected class of individuals protected by the ADEA, nor is he substantially younger than Torry because he is only two years younger. See Radue, 219 F.3d at 619 (stating that "to satisfy the 'substantially younger' requirement, the relevant individual must be at least ten years younger than the plaintiff.") (quoting Hartley v. Wisconsin Bell, Inc., 124 F.3d 887, 893 (7th Cir. 1997)). As such, Jennette cannot be used as a comparator under the ADEA.

Therefore, absent any showing that she was treated less favorably than younger, similarly situated employees outside the protected class, Torry's *prima facie* case under the ADEA fails. See Schuster, 327 F.3d at 574; see also Radue, 219 F.3d at 619.

11

## 2. Torry's *Prima Facie* Case Under Title VII[5]

To establish a *prima facie* case of racial discrimination under Title VII, Torry must show that: (1) she was a member of the protected class; (2) she was meeting her employer's legitimate job expectations; (3) she suffered an adverse employment action; and (4) similarly situated employees outside the protected class were treated more favorably. Haywood v. Lucent Technologies, Inc., 323 F.3d 524, 530 (7th Cir. 2003). As with Torry's ADEA claim, the parties do not dispute the first three elements of the *prima facie* case. Torry is African-American and was in good standing prior to being terminated in the October RIF. Thus, the only question the court must address in connection to the *prima facie* case under Title VII is whether Torry has produced evidence of similarly situated employees outside the protected class who were treated more favorably.

In support of her claim of racial discrimination, Torry provides affidavits of three former African-American employees who were terminated by Northrop in 1996. Specifically, Torry provides affidavits of Ardella Thomas, Jacqueline Davis, and Kerry V. Howard. On August 29, 2003, Northrop filed a motion to strike these affidavits based on numerous grounds. To the extent that these affidavits are based on hearsay, speculation, or provide no foundation for the conclusions they assert, Northrop's motion is granted and the statements proffered are stricken. As a result, the Davis and Howard Affidavits provide no proof to support Torry's claim. Similarly, the statements

---

[5]Northrop argues that Torry should be precluded from arguing a claim of racial discrimination under Title VII because Torry's Complaint alleges only age discrimination, not racial discrimination. Although Northrop raises valid issues in support of its argument, the court finds that it is best to deal with Torry's Title VII claim on the merits, particularly in light of the fact that Torry originally filed her Complaint *pro se*. See Haines v. Kerner, 404 U.S. 519, 520 (1972) (stating that courts should construe *pro se* complaints less stringently than those drafted by lawyers). However, the court admonishes Torry's attorney for failing to ensure that the Complaint on file at the time he filed an appearance in the case conformed with his client's claims.

proffered in paragraph 7 of the Thomas Affidavit are also stricken. Hence, the only admissible evidence Torry proffers in support of her claim--that other employees outside the protected class were treated more favorably--is that which shows that Northrop sent three non-African-American employees to departments outside of Unit 9510, but sent no African-American employees to other departments prior to the 1996 RIFs.

Specifically, Thomas refers to Dan Ryan, Steven Jennett, and Sophie Barnas as the Caucasian employees from Unit 9510 that Northrop attempted to reposition prior to the 1996 RIFs. Barnas, a Product Inspector Senior AWI, was hired in 1980 and thus had more seniority than both Torry and Thomas. As such, Northrop's layoff policy entitles her to a position over both Torry and Thomas. Ryan and Jennett, both with more seniority than Thomas but less than Torry, were placed in other units prior to the October RIF. However, both Ryan and Jennett applied for the positions to which they were sent through the Career Development Office. Under the applicable layoff policy in effect at the Rolling Meadows facility, both Ryan and Jennett were entitled to placement over Torry because Torry failed to apply for these positions. The layoff policy also mandates that Ryan and Jennett be placed for another position over Thomas because both had more seniority than Thomas. Finally, Thomas' statement fails because Emma Taylor and Dan Jackson, both African-American employees in Unit 9510, were able to obtain other positions as a result of the 1996 RIFs. Because Torry admits that this fact is true, Thomas' statement is contradictory and should be disregarded. See Pl.'s Resp. to Def.'s LR 56.1 Statement of Mat. Facts ¶ 41.

Thus, Torry fails to provide evidence to support her position that similarly situated employees outside the protected class were treated more favorably. As such, Torry cannot establish

a *prima facie* case of employment discrimination and her Title VII claim must fail. See Grayson v. City of Chicago, 317 F.3d 745, 749 (7th Cir. 2003).

### 3. Pretext Inquiry

Because Torry fails to provide evidence sufficient to establish a *prima facie* case of employment discrimination under both the ADEA and Title VII, the court need not determine whether she has met her burden of establishing pretext under the McDonnell Douglas burden-shifting method of proof. See Haywood, 323 F.3d at 531. However, with an abundance of caution, the court addresses the issue of pretext as it applies to this case.

To defeat a motion for summary judgment under the McDonnell Douglas approach, Torry bears the burden of proving that Northrop's proffered reason for her non-placement was a pretext for employment discrimination. See Wilson, 167 F.3d at 1119-20. "Pretext 'means a lie, specifically a phony reason for some action.'" Milbrook v. IBP, Inc., 280 F.3 1169, 1175 (7th Cir. 2002) (quoting Russell v. Acme-Evans Co., 51 F.3d 64, 68 (7th Cir. 1995)). The focus on the pretext inquiry is on the honesty of the employer's stated reason for the adverse employment action, not the accuracy. Tincher v. Wal-Mart Stores, Inc., 118 F.3d 1125, 1129 (7th Cir. 1997). The court does not sit as a "superpersonnel department" reexamining the propriety of every employment decision. Stewart v. Henderson, 207 F.3d 374, 378 (7th Cir. 2000). Instead, the court's only concern is whether "the legitimate reason provided by the employer is in fact a true one." Id.

Here, Northrop articulates a legitimate, non-discriminatory reason for its failure to place Torry in an alternative position in relation to the 1996 October RIF--that being that she was not eligible for placement in an alternative position under the terms of its existing layoff policy. Therefore, the burden shifts to Torry to show by a preponderance of the evidence that Northrop's

14

stated reason for her non-placement was a pretext for employment discrimination. See Baron, 195 F.3d at 339.

Torry fails to meet her burden because she does not provide evidence to support her position that the Northrop's stated reason was untrue. Although Torry argues that Northrop did not follow its Employee Handbook layoff policy, the court has already determined that the Employee Handbook layoff policy is not applicable to the employees in Northrop's Rolling Meadows facility. See supra Part II.B.1.a. In addition, Torry offers no evidence suggesting that Northrop ever applied its Employee Handbook layoff policy to other hourly Rolling Meadows employees. Torry only points to her experience in the 1988 RIF where she was placed in a lower level position even though she did not apply for one. Torry's reliance on the 1988 RIF is also misplaced because during the 1988 RIF, Torry was placed in an existing AWS position--a position she previously held. This action was consistent with Northrop's layoff policy. Thus, Torry's claims suggesting that Northrop ignored this policy so that it could discriminate against her are unfounded.

Additionally, Torry argues that the fact that Northrop does not keep statistical data on those employees placed into alternative positions after a RIF is indirect evidence of pretext sufficient to show a genuine issue of material fact. See Pl.'s Resp. to Def.'s Mot. for Summ. J, at 7, 9. Torry further appears to argue that Northrop's failure to produce such evidence during discovery, but then using this information to support its motion for summary judgment only strengthens her pretext claim. See id. The court is not persuaded by Torry's argument. Torry provides no support for her claim that the failure to keep statistics is evidence of pretext. Furthermore, although Northrop does not keep such statistics, Northrop was able to identify the age and race of every employee identified

15

through its personnel records, and its use of this information in its motion for summary judgment was proper. As such, Torry's pretext claim fails.

### III. CONCLUSION

For the foregoing reasons, Defendant's Motion to Strike the Affidavits of Ardella Thomas, Jacqueline Davis and Kerry Howard brought pursuant to Rule 56(e) is granted in part and denied in part. Defendant's Motion for Summary Judgment brought pursuant to Federal Rule of Civil Procedure 56 is granted.

IT IS SO ORDERED.

ENTER:

CHARLES RONALD NORGLE, Judge
United States District Court

DATED: 11-5-03

16